UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

MARGARET A. BUTLER, )
)
        Plaintiff, )
)
v. ) No. 1:10-cv-817 (AJT/TRJ)
)
SHEILA BAIR, )
)
        Defendant. )
_____)

## MEMORANDUM OPINION

This matter is before the Court on Defendant's Motion for Summary Judgment. [Doc. No. 10.][1] A hearing on the motion was held on October 29, 2010, following which, the Court found that there are no triable issues of material fact and Defendant is entitled to judgment as a matter of law. The Court therefore granted the motion and now issues this Memorandum Opinion in further support of its decision.

### I.    BACKGROUND

Based on the record before the Court, the following is undisputed:

In 1999, Plaintiff began working for the Federal Deposit Insurance Corporation ("FDIC") as a Grade 13 Instructional Systems Design Specialist in Arlington, Virginia. Beginning in late 2005, Plaintiff began to receive negative performance evaluations from her supervisors. These issues continued into 2008, and resulted in a Letter of Warning regarding her performance. When these problems continued, Plaintiff was placed on a Performance Improvement Plan ("PIP"), but her supervisors continued to view her performance negatively despite assistance and feedback.

---

[1] The Defendant has been sued in her capacity as Chairman of the Federal Deposit Insurance Corporation only. Compl., ¶ 2.

On February 6, 2009, Plaintiff's supervisor, Hudson Jackson, gave Plaintiff the lowest possible performance appraisal in every category on her 2008 assessment. In response, Plaintiff filed an informal EEO complaint with the FDIC's Office of Diversity and Economic Opportunity ("ODEO") alleging discrimination based on age, physical disability, and reprisal based on Jackson's allegedly harassing treatment of her. Following mediation in March of 2009, the FDIC agreed to settle Plaintiff's complaint, and to temporarily re-assign Plaintiff until Jackson's term as her supervisor expired. The agreement was signed by Thomas Terwilliger, Chief Learning Officer of the FDIC's Corporate University, and Terwilliger agreed, among other things, to "encourage an open door policy with Ms. Butler." [Doc. No. 11-6, at 87-91.]

Subsequently, Plaintiff was assigned to work under Philip Mento. The record indicates that her performance, as evaluated by Mento, continued to be deficient. When Plaintiff returned to her prior position after the end of Jackson's term, her new supervisor, Suzanna Susser, also found her performance to be deficient.

On September 30, 2009, Susser gave Plaintiff an unacceptable/unsatisfactory mid-year review. In response, Plaintiff filed another informal EEO complaint alleging age discrimination, harassment/hostile work environment, and reprisal in connection with her mid-year review.[2]

On October 23, 2009, Susser issued a notice of proposed removal for unsatisfactory performance based on a review of projects to which Plaintiff was assigned after her completion of the PIP in March 2009. In that letter, Susser laid out problems

---

[2] Plaintiff ultimately filed a formal complaint with ODEO. The ODEO, however, dismissed the complaint in light of Plaintiff's appeal to the Merit Systems Protection Board ("MSPB") because the issues in Plaintiff's MSPB appeal were inextricably intertwined with her complaint to the ODEO. [*See* Doc. No. 11-13.]

2

with Plaintiff's performance on three different projects.[3] Plaintiff made written and oral replies to the allegations in Susser's October 23, 2009 notice, to no avail.

On January 13, 2010, Steven Mosier, who was Terwillger's deputy and immediate subordinate, issued a letter terminating Plaintiff effective January 15, 2010. According to Mosier, the decision was based on his conclusion that "the proposed removal for Unsatisfactory Performance is fully supported and warranted." [Doc. No. 11-2, at 21.]

Plaintiff retired on January 13, 2010, in order to take advantage of her retirement benefits prior to termination. On January 19, 2010, Plaintiff appealed her termination to the MSPB. Plaintiff's complaint before the MSPB alleged discrimination based on age, sex, religion and disability, as well as retaliation for protected EEO activity, but ultimately indicated that "her sole affirmative defense was retaliation for filing an EEO complaint alleging discrimination and that she was not raising a separate discrimination allegation." [*See* Doc. No. 11-11, at 24, fn 2.] An administrative law judge issued an Initial Decision denying Plaintiff's appeal on May 19, 2010. Plaintiff did not seek appeal to the U.S. Court of Appeals for the Federal Circuit. Rather, on July 22, 2010, she filed

---

[3] These projects included (1) a Needs Assessment performed under Mento; (2) a Core Functions Training Toolkit that was also prepared under Mento; and (3) an Interpersonal Communications and Listening Skills Curriculum Prerequisites project. Plaintiff claims that the notice mischaracterized her work. As to the Needs Assessment, she claims that it was either not assigned to her, or, in the alternative, that she completed it. She has not, however proffered any evidence that it was completed successfully. As to the Core Functions Training Toolkit, she claims that it was completed satisfactorily, and points to comments from an FDIC official, Charlotte Kaplow regarding the project. However, Kaplow's comments do not indicate that the project was completed satisfactorily. Rather, they indicate that the project was rough and still under development at the time that Kaplow made the comments at issue. [*See* Doc. No. 11-7, at 27 ("As she [Plaintiff] told me, it is not beautiful, but it works and she is making good progress at getting the modules completed. Once we get the Toolkit up and running, we can worry about beauty.").] Plaintiff has also not offered evidence to dispute Susser's critiques of the Interpersonal Communications and Listening Skills Curriculum Prerequisites project.

3

this action pursuant to 5 U.S.C. § 7703(b)(2), claiming that she was fired in retaliation for her February 2009 EEO complaint in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, et seq. Plaintiff does not otherwise contest her termination, or seek review of the MSBP's decision to deny her appeal on grounds that are separate and apart from the alleged retaliation. On September 27, 2010, Defendant filed the instant Motion for Summary Judgment.

## II. STANDARD OF REVIEW

Summary judgment is appropriate only if the record shows that "there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Evans v. Techs. Apps. & Serv. Co.*, 80 F.3d 954, 958-59 (4th Cir. 1996). The party seeking summary judgment has the initial burden to show the absence of a material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). To defeat a properly supported motion for summary judgment, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 247-48 ("[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.") (emphasis in original). Whether a fact is considered "material" is determined by the

substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 248. The facts shall be viewed, and all reasonable inferences drawn, in the light most favorable to the non-moving party. *Id.* at 255; *see also Lettieri v. Equant Inc.*, 478 F.3d 640, 642 (4th Cir. 2007).

Federal district courts have jurisdiction to review MSPB decision when such decisions involve Title VII discrimination claims. 5 U.S.C. § 7703(b)(2). The MSPB's determinations involving Title VII discrimination claims are reviewed de novo, and the employee has "the right to have the facts subject to trial de novo by the reviewing court." 5 U.S.C. § 7703(c); *see also Young v. West*, 149 F.3d 1172 (Table), 1998 U.S. App. LEXIS 12729 at *13 (4th Cir. 1998). However, "[n]otwithstanding the de novo nature of the district court's review of discrimination claims, the court may consider evidence from the MSPB's formal record" in addition to the pleadings and discovery adduced in this proceeding. *See Monk v. Potter*, Case No. 4:09-cv-00073, 2010 U.S. Dist. LEXIS 71670 at * 17 (E.D. Va. July 15, 2010) (summarizing authorities).

### III. ANALYSIS

In order to establish a prima facie case of retaliation, Plaintiff must show that: (1) she engaged in a prior protected activity; (2) she suffered a materially adverse employment action; and (3) the adverse action was taken because of the protected activity. *Gibson v. Old Town Trolley Tours*, 160 F.3d 177, 180 (4th Cir. 1998). If she establishes this prima facie case, the burden shifts to the Defendant to proffer a legitimate, non-retaliatory reason for her removal. If the Defendant does so, Plaintiff must rebut the proffered reasons. *King v. Rumsfeld*, 328 F.3d 145, 151 (4th Cir. 2003).

5

In this case, there is no dispute that Plaintiff's EEO complaint in February 2009 was a protected activity, and that she subsequently suffered a materially adverse employment action. However, Plaintiff has not presented evidence, when viewed most favorably to Plaintiff, including reasonable inferences therefrom, sufficient to establish that there was a causal nexus between her EEO complaint and an adverse employment action. In this regard, Plaintiff does not present any direct evidence of retaliation. Rather, she points to the circumstances surrounding her separation from the FDIC, and claims that there is evidence that FDIC officials conspired to hide the true rationale for their decision. Each of these contentions will be addressed in turn.

The circumstances under which Plaintiff was removed from FDIC service do not give rise to a prima facie case for causation. Over 8 months passed between Plaintiff's EEO complaint and Susser's October 2009 proposed notice of removal; and over 11 months passed between Plaintiff's February 2009 EEO complaint and her termination in January 2010. *See Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001) (explaining that the "temporal proximity must be very close"); citing *Richmond v. Oneok, Inc.*, 120 F.3d 205, 209 (10th Cir. 1997) (three month period insufficient); *see also King*, 328 F.2d at 151, fn.5 (noting that passage of two and a half months is "sufficiently long so as to weaken significantly the inference of causation"). In addition, any possible inference is further weakened by the fact that Plaintiff received numerous negative performance reviews both before she filed her EEO complaint in February 2009, and in the period between February 2009 and her termination. *See Horne v. Reznick Fedder & Silverman*, 154 Fed. Appx. 361, 364 (4th Cir. 2005) (explaining that the inference of a causal connection may be disrupted by ongoing or intervening circumstances that give

rise to a legitimate basis for termination). While Plaintiff disagrees with these assessments of her performance, she has not produced independent evidence that would call these negative performance reviews into question. As a result, Plaintiff has not established that she can raise a triable issue of fact as to the third element of her prima facie case.

In the alternative, this Court finds that the Defendant demonstrates legitimate, non-retaliatory reasons for her removal, viz, Plaintiff's deficient performance, and that Plaintiff has not rebutted those reasons or demonstrated them to be pretextual. Plaintiff's deficient performance is well documented in the record before the Court. While Plaintiff believes that she performed adequately, her subjective belief alone is not sufficient to raise a triable issue of fact on this issue. *King*, 328 F.3d at 149 (explaining that a plaintiff's own testimony "cannot establish a genuine issue as to whether [the plaintiff] was meeting [the employer's] expectations."); *Evans*, 80 F.3d at 960-61 ("It is the perception of the decision maker which is relevant, not the self assessment of the plaintiff.").

Finally, the Court concludes that Plaintiff has failed to produce sufficient evidence to raise a triable issue as to whether Defendant's otherwise legitimate non-discriminatory reasons for her termination were a pretext for illegal retaliation. In this regard, Plaintiff claims that FDIC employees, including Terwilliger, were biased against her and conspired to cover-up the true reasons for her termination and that there are inconsistencies in the explanations of those involved in her termination sufficient to raise a triable issue as to pretext. Plaintiff's claims are not sufficiently supported by the record before the Court. First, among those who Plaintiff claims were part of an effort to

7

conceal the true reasons for her termination, the record only reveals that Mosier and Terwilliger knew about Plaintiff's February 2009 EEOC complaint before she was terminated. Second, the excerpts of Terwillger's deposition that have been filed with this Court do not reveal that he attempted to conceal his contacts with Susser, as Plaintiff claims. Nor did Terwillger's alleged statements to Plaintiff regarding her participation in the FDIC's bank closure initiative, Plaintiff's attendance at a retirement seminar, or the other alleged incidents reveal a retaliatory animus. Similarly, Susser's failure to include Ira Kitmacher's role in the evaluation of Plaintiff in her affidavit is not evidence of a cover-up, as there is no evidence that Kitmacher did anything more than "review [Plaintiff's] work product and discuss his review" with Susser and FDIC human resources personnel. [*See* Doc. No. 18-6, at 2.] Finally, the record does not support Plaintiff's contention that Mosier attempted to cover up involvement by Mento or Jackson in his evaluation of Plaintiff. Rather, Mosier clearly testified that during his review of whether Plaintiff's termination was appropriate he spoke with "two individuals to get clarification on some of the material that was in the binder that had to do with examples of [Plaintiff's] work", and while he testified initially that he spoke with Mento and Jackson, he ultimately testified he could not recall whether Jackson was the second person with whom he consulted. [*See* Doc. No. 18-3, at 2-3.] On these facts, the evidence does not support a finding that the FDIC's legitimate reasons for terminating Plaintiff were pretextual, and that the "true" reasons, retaliation for filing her EEOC complaint, were the subject of a cover-up.

## Conclusion

For the above reasons, Defendant's Motion for Summary Judgment [Doc. No. 10] will be granted and this case will be dismissed with a Final Judgment Order entered in Defendant's favor.

An appropriate Order will follow

/s/
Anthony J. Trenga
United States District Judge

Alexandria, Virginia
November 4, 2010